June 13th, 1906.

———o———

## No. 3865.

### (Court of Appeal, Parish of Orleans.)

### YOWELL AND WILLIAMS vs. NORMAN WALKER.

1. An obligation without a cause or with false or unlawful cause, can have no effect C. C. 1893.
2. The cause is unlawful when it is forbidden by law, when it is contra bones mores (contrary to moral conduct) or to public order, C. C. 1895.
3. It is not necessary to prove that there was an express agreement to stifle a prosecution or compound a felony, but if the obligor is induced to believe, and it is apparent to stifle a prosecution, the promise is void.

Appeal from Civil District Court, Division "C."

Florance & Rosen, for Plaintiff and Appellee.

Lazarus & Luce, for Defendant and Appellant.

ESTOPINAL, J. The plaintiffs were state agents in Arkansas for the Union Life Insurance Company of Ohio with offices in Little Rock.

Alex Walker was their agent in Fort Smith, Ark., under a contract signed by him and two bondsmen to guarantee his fidelity in office.

In June 1900 plaintiff discovered forgeries and defalcations committed by Alex Walker aggregating about $4200.00.

This was settled by the acceptance of Alex Walker's individual notes for one half the amount, say $2100.00, and his and his

454

brother's, (the defendant) joint and several notes at $50.00 for the other half.

The record shows the first note to have been paid by defendant, but, defaulting in the payment of the others, defendant was sued to recover on nine of the notes, aggregating $450.00, for which plaintiff obtained judgment which was paid by defendant.

The present suit is to recover $800.00 with interest represented by 16 notes of the same series sued on heretofore.

The defendant in his answer claims that the notes were given under duress ,as his brother was threatened with a prosecution for forgery; and secondly, that the consideration was illegal because the plaintiff agreed to stifle a criminal prosecution.

Defendant further urged a plea in reconvention for amounts paid prior to and under the judgment referred to above, and for cancellation or return of the other notes.

Judgment below was for plaintiff and dismissed the demand in reconvention, from which judgment defendant prosecutes this appeal.

The reconventional demand having been abandoned in this Court we need not consider it at all.

At the outset it may be stated that there is no dispute that Alex Walker was a defaulter and forger and that plaintiff's had ben victimized by him to the extent of $4200.00.

Taking up the first defense, to-wit: "That the notes were given under duress, as his brother was threatened with a prosecution for forgery," we find codal provision to be (Art. 1852 C. C.) "A contract, produced by violence or threats, is void, although the party in whose favor the contract is made; did not exercise the violence or make the threats, and although he was ignorant of them."

Our examination of the testimony and correspondence found in the record satisfy us that such threats were made as to render the contract invalid under the terms of the Code. The letters addressed to defendant by plaintiffs, and particularly that of date May 19th, leave no room to doubt that they contained but idly covered threats of criminal prosecution against defendant's brother unless the former agreed to assume the payment of the

455

defalcation.    In the letter of May 19th, 1900, we observe this passage, which was certainly intended to alarm, and in the end, coerce the defendant into action, as follows:    "We have the kindest feeling for Alex and are doing all in our power to shield and protect him, *but we know positively* that if we are forced to proceed against his bondsmen, that they will not be charitably disposed towards him, *one of them, Dr. Bailey is very bitter* on account of Alex being forced to testify in a suit against him, and if the matter is broached to him, *it will immediately result in a prosecution.*

We find that several letters had been written defendant by plaintiffs prior to the one above quoted, but in none of these was the idea of a public prosecution more than hinted at, but here plaintiffs cautiously say, *we will* not prosecute him, but we will proceed against his bondsmen, and one of those will be only too glad of the opportunity to send your brother to the penitentiary."

A Mr. Milton Boyd, brother-in-law of Alex Walker, who subsequently supplanted Alex as plaintiff's agent at Fort Smith, Ark., after consulting the Mr. Williams of plaintiff firm urges upon the defendant that unless he come to his brother's rescue, the latter cannot escape prosecution.    This communication, under the authorities, must be taken and considered as amanating from plaintiff.    Schultz vs. Catlin N. W. Rep. 946.

It cannot be doubted that this is a threat, an express one, and which appears to have brought the defendant to a sense of the awful consequences to himself and the honored family name, because a few days later the defendant arranged for a settlement of his brother's obligation by executing the notes to cover the defalcation.

It is clear that these notes were given under dures of threats to bring about a criminal prosecution but the defendant having acquiesed in and ratified the contract by payment of the first notes after the threats of prosecution had been made, is now estopped from setting up the first defense.    The express ratification of the contract after the danger has ceased will not invalidate the same for threats or violence.

456

Article 1855 C. C. provides: "No contract can be invalidated on an allegation of violence or threats, if it has been approved either expressly after the violence or danger has ceased, or tacitly by suffering the time limited to elapse without causing it to be rescinded."

We are of the opinion however that the second defense, "that the consideration was an illegal one because against public morals and policy, is fully sustained by the evidence and in consequence defendant cannot be held liable on the notes given in settlement of his brother's criminal lashes.

Counsel for plaintiff urges strongly that unless the defendant, upon whom the burden or proof admittedly is, can show the existence of an express and positive agreement to stifle a criminal prosecution, the contract is valid.

The evidence found in this record may not be an express agreement in the sense intended by counsel, but it is of such a character as to point conclusively to what was in the minds of the persons to the agreement at the time it was consummated.

Certainly, in the case at bar, the parties plaintiffs and their advisers were too shrewd, as shown by the correspondence, to enter into an open and precise agreement looking to the settlement of their claim against defendant's brother which should stipulate in so many words, "*that* provided restitution was made there should follow no criminal prosecution." The correspondence following Norman Walker's determination to help out his erring brother establishes beyond the peradventure of a doubt in our opinion, that the settlement made by defendant was intended to close the matter and so understood by both plaintiffs and defendant.

Your favor to hand and it gives us much pleasure to know that you will sign the notes with Alex as agreed upon, *for this now will settle the whole matter.*

When we consider the long correspondence between the parties and the frequent mention of *impending prosecution if the matter is not settled,* it is reasonable to assume that plaintiffs expression *"this now will settle the whole matter"* meant that there should not be a public prosecution. In the light of the circum-

stances brought out in this case it strikes us that any other assumption would be absurd.

Now let us see what was defendant's understanding of the agreement. When on the witness stand he is asked.

Q. Mr. Walker, what consideration did you receive from Yowell & Williams for the notes which you jointly executed with Alex Walker, some of which are sued on in this case, and those not sued upon you claim in your reconventional demand should be returned to you?

A. There was no financial consideration at all, *except in so far as preventing a public prosecution.*

Q. Prosecution of whom?

A. Alex Walker.

Q. For what?

A. For forgery.

Q. Was that the only consideration running from you to Yowell & Williams?

A. Yes, sir; *the only one,* I never heard of the man before.

Q. Why did you give those notes Mr. Walker?

A. I thought to prevent a prosecution for forgery.

From the tender of the letters written by plaintiffs and Milton Boyd, who reported the former's plan to Norman Walker, the latter had reason in the first place to fear a criminal prosecution of his brother, and having, from fear of such a result, signed the notes, he was perfectly justified in assuming *the consideration* to be a *promise not to prosecute,* plaintiff having written him (June 29th, 1900) "this now will settle the whole matter."

We repeat that though there is no express agreement to stifle a prosecution yet there is abundant proof in the record to sustain the opinion that this was intended by the parties and defendant cannot be held liable under the agreement entered into with and the notes made in favor of plaintiffs.

"An obligation without a cause or with false or unlawful cause, can have no effect." C. C. 1893.

"The cause is unlawful, when it is forbidden by law, when it is *contra bones mores* or to public order." C. C. 1895.

458

"That is considered as morally impossible which is forbidden by law or contrary to morals. All contracts having such an object are void." C. C. 1892-2031-11.

15 An. 176.   26 An. 576.

The fact that the forged documents or evidence of guilt of Alex Walker were not given into the hands of defendant or destroyed does not alter the case and that a criminal prosecution was instituted on one of the forged papers covered by the agreement only serves, in our opinion, to show bad faith on the part of plaintiffs.

It would make this opinion unnecessary long to take up all the minute matters brought out upon the trial of the cause below which would in no wise assist in otherwise determining the issues involved.

In support of the view which we have adopted relative to the nature of the agreement necessary for the compounding of a felony, defendant cites Mr. Greenhood on Public Policy, page 453 as follows:

## "AGREEMENTS IN TERMS TO COMPOUND UNNECESSARY."

"It is not necessary to prove that there was in terms an agreement to compound the crime; if it is apparent that such was the intention of the parties, and the agreement was such as to carry out such intent, it is enough.   It is not necessary that the persons receiving the consideration should agree not to commence new proceedings against the person accused to render the contract invalid.   It is enough that it is understood that the accused is to derive some immunity from criminal responsibility or some advantage in that regard by the contract being made. So a note given by one arrested for obtaining money by false pretenses, with the understanding that he should be released if it was given, so "that he might go to work to earn money to pay it," though it be delivered to a middle-man only, with such understanding ,and no proof to be offered that the condition was assented to by the prosecutor upon its delivery to him."

Again, this learned writer says:

459

"EXPRESS PROMISE NEED NOT BE PROVED.—
Neither is it necessary that there should be an express promise
to stifle the prosecution. What the law condemns is the dis-
position of public matters by private arrangement. It forbids
public justice to be made the subject of private bargains. If,
therefore, the party making concessions is induced to believe
that the prosecution will not be begun or will be stopped,
either by the promise or some one whom the promisee knew
was holding out such inducements, the promise is void."

Again, he says:

"IMMATERIAL WHEN AGREEMENT TO COM-
POUND MADE.—It is not necessary that the promise to for-
bear should have been made at the very moment, or even on the
same day as the execution of the agreement to pay. It is
enough if it appears that such promise was made at that time,
or prior thereto," and that all parties acted in view of that
promise, or that it was the inducement which operated upon the
minds of the obligors."

For the reasons assigned, it is therefore ordered, adjudged
and decreed that the judgment of the District Court be and it is
hereby avoided, reversed and set aside, and it is now ordered
and decreed that there be judgment in favor of the defendant dis-
missing plaintiff's suit and it is further ordered and decreed
that plaintiff's return and deliver to defendant for cancellation
and annullment all the notes held by them against defendant
arising out of the transaction which provokes this suit.

Costs of both Courts to be taxed to plaintiffs.

June 7, 1906.

DUFOUR, J. Dissents.

Rehearing refused June 28, 1906.

Writ granted by Supreme Court July 14, 1906.